Godfrey v. Banos is the next case. This is the second chapter of the same book. I think it's fair to say, at least for me, we probably don't need to re-argue the points we made in the first case. Maybe we can focus on the unique aspects of this case. Certainly, that was going to be my first question, Your Honor. Yes, I think it makes sense to just start off by talking about the differences between these two cases. The first one being the procedural posture. Martinez Banos, we are talking about an appeal from a final decision of the district court, whereas in Aleman we were talking about a preliminary injunction. So whereas in Aleman we had the preliminary injunction factors, that's not the case here. The classes are also slightly different between the two. Martinez Banos would be part of the Aleman class were it not for the fact that it was certified first. So geographically, Aleman is much wider. It's all of the Ninth Circuit, essentially, but for Martinez Banos and that Rodriguez class in CDCAL that's still being adjudicated. It's also slightly broader in Aleman in that it encompasses not just individuals with reinstated removal orders, so individuals typically who have been put in withholding only proceedings. It also includes a slightly larger group of individuals who have a collateral challenge to their removal order. So individuals who have a pending motion to reopen their removal order before the immigration judge or the Board of Immigration Appeals or who are seeking judicial review of a denied motion to reopen. So those are the primary differences. One final difference I guess I would note is that in Aleman-Gonzalez, the preliminary injunction only requires the bond hearing at 180 days. It's not yet recurring, though I would note that in the complaint in Aleman-Gonzalez they do seek recurring, just like Doof and Martinez Banos already requires the recurring bond hearings. I gather your point is, even though you disagree with Doof or however you say it too, at the six months you clearly think that Jennings lasted anything beyond that or any other requirement. Is that correct? That's correct. And I would note, Your Honor, just to go back to something that was discussed briefly in the last case, the government does not agree that Zavidas and Doof both require some sort of determination at six months because that's not what Zavidas requires. That's not what the Supreme Court said. The Supreme Court merely said that the implicit limitation from the statute read in its context is that the detention authority under 1231A6 only lasts for a period reasonably necessary to bring about that alien's removal. The Supreme Court in Zavidas went on to kind of explain an analytical framework for that and to say that generally speaking there's a six-month period where there's a presumption that that's reasonable because the government needs some time to effectuate removal. But that's merely a presumption. An alien can rebut that presumption well before six months. And even after six months, it is quite possible and indeed frequently happens that there is still no, or there is, yeah, there is still a significant likelihood of removal in the reasonably foreseeable future. So there's nothing magic or special about six months under the Zavidas analysis. And that gets into actually one thing that I would like to touch on because we didn't really get time in the last case is the conflict between Jennings and, or sorry, Doof and Zavidas. Because, again, even if you set aside that Clark v. Martinez problem, you have an issue where Doof and Zavidas resolve the ambiguity in 1231A6 in fundamentally different ways. So whereas Zavidas makes it all about the likelihood of removal or the reasonableness of removal in the reasonably foreseeable future, Doof makes it all about flight risk, danger to the community. And I would also note that we also have the courts, the two decisions, envision completely different decision makers, right? And for Doof it's immigration judges in custody redetermination hearings and immigration court who are making that determination with respect to flight risk and danger to the community. Under Zavidas, there's no involvement for an immigration court or an immigration judge at all. The Supreme Court certainly could have said that, but they didn't. Instead, they created a habeas petition. So that's what an individual would do to assert their Zavidas claim. And I think separate and apart from those two being in conflict in the abstract, if we think of how they'd actually be applied in the real world, I think that conflict becomes even clearer because we can envision there would be situations where the two cases and their analysis would come to contradictory conclusions about the same individual with respect to the government's authority to detain. So if we imagine an individual who there is a significant likelihood of removal in the reasonably foreseeable future, that's just clear. We remove people to that country all the time, and there's nothing particularly stopping this individual. We just haven't been able to do it yet. Zavidas would say, okay, great. The detention authority under 1231A6, it's clearly authorized, so this individual can still be detained. But if we imagine that same individual simultaneously to having high slurf, as we like to call it, significant likelihood of removal in the reasonably foreseeable future, we could envision that they don't have any criminal history, don't have any history of being a flight risk or anything that would suggest that. So Doof would say, no, 1231A6 doesn't authorize that detention. So what is the government supposed to do when you have two statutes or two interpretations of the statute that are not consistent? And I would also suggest we could reverse that hypothetical. So we have an individual for whom there is just no slurf. It's a country that the government hasn't removed anyone to in many years. So I think it would be clear that a district court judge could conclude there's just no likelihood there, but who nonetheless in a bond hearing before an immigration judge under Doof could see that this person has a lengthy criminal history, perhaps has a lengthy history of failing to appear for court proceedings, criminal court proceedings, immigration court proceedings, and who therefore would clearly be a flight risk and or a danger to the community. And we would have this same conflict in reverse where Zabudis would say, well, because there's no likelihood of removal, you can't detain this person any longer under 1231A6, whereas Doof would say, well, as long as he got his bond hearing at 180 days and he keeps getting bond hearings every 180 days after that, if he's still a flight risk and he's still a danger to the community, you can continue to detain that person. Doof says it beyond – I know about the 180 days, but you're saying that Doof requires the bond hearings every 180 days thereafter? The periodic, yes. Okay. I'm sorry. You're saying – can you repeat that again about where the periodic requirement comes from? My understanding is that Doof requires the bond hearing after 180 days and every – periodic bond hearings every 180 days thereafter. You think Doof says that? I'm beginning to question my judgment, but I'll put it this way. That is how the district court in this particular case interpreted Doof and extended Doof to this particular situation. And my point is that separate and apart from whether they're recurring or not, there is a conflict between Zadvidas and Doof. They are not consistent. They do not subsume each other. Doof is not just a straightforward application of Zadvidas. And I would note that the Supreme Court is fully capable of interpreting a statute and requiring bond hearings and could have done that in Zadvidas if they chose to do so, and they did not. And I would note that that was reiterated in Clark where, again, the question of, well, did Zadvidas leave the door open to perhaps there being multiple different restraints, two restraints. If we believe that between Zadvidas and Doof and the Jennings court's treatment of them, and from my perspective a little differently than you view it, that they authorize a bond hearing at six months but nothing thereafter, that's really what the government would want in this case, I assume, putting aside what we talked about in the other case. But if that case went against you there, you would be saying, well, if you're going to have six months, that may be one thing, but you can't do anything thereafter because Jennings expressly prohibits that. Is that your position? No, Your Honor. I think it's broader than that. Even if you just limit it to the one bond hearing at 180 days, the problem we still have is that that's not what Zadvidas said. Zadvidas did not create a bright line rule. It's a bit of a tongue twister. They didn't create that rule. There's nothing magic about six months under Zadvidas. They merely said that, yeah, there's going to be after removal order becomes final, there's going to be a period of time just logistically that the government will need to get removal in order and actually remove the person. And the Zadvidas court said six months is presumptively reasonable. But I would add, again, that's just a presumption. An alien can rebut that much sooner. But I thought the premise of the question was if you lose the first Ayman Gonzalez, then you wouldn't have that argument available in this case anymore. So in this case, would you be challenging the period of the every 180 days thereafter part of this injunction as an impermissible extension of DUF? We would, Your Honor, but, again, from the government's perspective, our position is that the bigger problem is just DUF as a whole and construing the statute to require bond hearings when the statute says nothing about bond hearings. Okay, if we construed Jennings as not interfering with DUF and we have construed the six-month requirement just the one time, not thereafter, as being validated by Zadvidas and we're a three-judge panel, we really can't help you much on DUF if we don't think Jennings changed it, right? Yes, I think that's true. I would note that the government's position is that DUF was wrongly decided even at the time. But correct, and that's the key thing here, Your Honor, is that we're not trying to relitigate DUF. The key thing here is that— I'm shocked. I'm shocked. The key thing here is that the situation has changed. We've had the Supreme Court weigh in in a way that they were not able to after DUF, and they have clarified how the canon works, and they've clarified that merely spotting an ambiguity in the statute and then spotting a potential constitutional problem doesn't give the district court or an appeals court, for that matter, permission to just start rewriting the statute and layering in procedural requirements without any statutory foundation. I get that, and you made that point brilliantly in your first argument. But the reality is if we don't find that the Supreme Court has abrogated anything in DUF to the degree necessary to overrule it by virtue of Miller v. Gammey, then what would you want us to do? We can't overrule DUF as a panel of three. What would you have us do? I don't like the premise of the question, Your Honor.  This is, of course, all hypothetical. Certainly. Under that hypothetical where the court has rejected all of my warnings about the irreconcilability, we acknowledge that, yes, that would probably require going on bonk or perhaps seeking cert, not that I'm authorized to make any decision about that. That's well above my pay grade. But, yes, we do concede that. But again, though, I think one way of looking at it is not just the question of how does DUF survive in light of Jennings, but how can this court not violate Jennings if it continues to follow DUF? And that's what we're talking about here from the government's perspective of, you know, Jennings has already addressed exactly the question that DUF addressed, which is when you have may-detain discretionary language, it's not like the other two statutes that were shall, that were mandatory detention, that Jennings said you just don't get to do the canon at all because they're not ambiguous. But when you have Jennings, which directly addressed discretionary may-detain language and directly addressed the question of can that be plausibly interpreted to require bond hearings? And that answer was no, quite clearly. You know, Jennings says that in doing so in Rodriguez, the Ninth Circuit layered on procedural protections, bond hearings, burden of proof, et cetera, without any arguable statutory foundation, and that's a quote. And I think it's very difficult for this court to continue to find DUF to be good law and to follow DUF without running afoul of that part of Jennings. And Jennings clearly is binding on this court, just as I acknowledge that DUF is binding on this panel. And the reality is that the court didn't talk about the statute we're talking about here, and it didn't specifically overrule DUF. So that's what we're stuck with here. I know your position is that it's just irreconcilable. I'm sure I won't be able to sleep tonight because of your argument, but what can I say? Thank you, Your Honor. I do appreciate that. The one thing I will make is that, yes, you're correct, literally speaking, that 1231A6 was no longer a part of the Rodriguez class. So unfortunately for all of us, I think, for clarity's sake, the Supreme Court just had no occasion to weigh in on that. But I will note that the Supreme Court in Jennings did talk about Section 1231A6 quite a bit because they cite to Zadvydas and to Clark with approval. And they contrasted that, really held up Zadvydas and Clark as this paragon of the proper application of the canon of constitutional avoidance in contrast to how the Ninth Circuit had done it in Rodriguez. So I think, again, the Supreme Court can do what it wants. It could have used that opportunity to weigh in and say that Zadvydas is no longer good and that's just not how the canon works. But that's not what they did. So I do think that even though 1231A6, this statute, was not directly at issue before the court in Jennings, it was certainly on the Supreme Court's mind. How do you know that? Because they talked about Zadvydas and they talked about 1231A6 quite a bit. They arguably talked about it more than they talked about 1226A, which is a little unfortunate for the government here. But isn't it remarkable that since they had it on their minds and they struck down these other statutes with such clarity that they wouldn't have gone ahead and blasted our analysis under Duff and so on if it was so wrong? Why didn't they do that? They're really smart people. They knew what they were talking about. Why didn't they do that? Well, I think there's a couple different ways to answer that, the first being that they didn't have occasion to because that wasn't the legal question before them. But secondly— If it isn't, then why is it before us in the sense of being a compelling argument that it's overruled? Because, as I said, and this goes back to the Miller v. Gammey and the clearly irreconcilable, while they didn't talk about 1231A6, the Supreme Court in Jennings did talk about how do you apply the candidate of constitutional avoidance? And fortunately for us, even more specifically, how do you apply it in the context of immigration detention statutes? And even more specifically for us, in the context of an immigration detention statute that has discretionary may-detain language. So that, I think, is the answer to your question. Do you want to save, like you did last night, do you want to save four minutes or whatever? Yes, I would love to do that. Thank you. Okay, great. Good morning. Good morning. Matt Adams with Northwest Immigrant Rights Project, on behalf of the plaintiffs and class members of Martinez-Banez. So the government errs in asserting that, first, the district court extends DUF to cover this class. DUF is unequivocal. Any person facing prolonged detention under 1231A6 is entitled to a bond hearing before an immigration judge. And this court's subsequent decision in Padilla-Ramirez made clear that people like our class members, people who are placed in withholding-only proceedings, are subject to detention under 1231A6 as post-order detainees, notwithstanding the ongoing proceedings. Okay, let's say, arguendo, that we agree with you about the first hearing in approximately six months. But thereafter, the periodic bond hearings that we got to with these other statutes, doesn't that defeat your argument that that portion of the district judge's decision should survive? Didn't the Supreme Court strike that down? No. And I would agree with what I think was the court's implication to the questions to opposing counsel, that DUF does not necessarily require those periodic hearings, but I do not agree that the Supreme Court's holding in Jennings v. Rodriguez struck down that those periodic hearings may be appropriate. And there's a couple... They didn't specifically mention that problem, did they not? They did in a separate context. In 1226A. And if I may go to the language of the Supreme Court, because I think it's instructive, the Supreme Court did not just focus on the statute in 1226A, but instead pointed to the implementing regulations as well. It said, the Court of Appeals ordered the government to provide procedural protections that go well beyond the initial bond hearings established by existing regulations. Because it's important to note that 1226A, likewise, does not make reference to a bond hearing. It's only the implementing regulations that provide that right. Similarly, for post-ordered attention, the regulations require periodic custody determinations. And that's at 241.4k, subsections 2 and 3. So the difference there with those regulations is that they allow that custody determination to be made by the ICE official instead of an independent decision maker, a neutral arbiter, as this court required in Duke. So the disagreement is over who should conduct those periodic custody determinations. As the regulations make clear that you get that six-month custody determination, and then at a minimum every year thereafter, but no sooner than every three months. So which of our cases would you point to to support the proposition that there should be a periodic hearing after the initial one? So I would point to this court's analysis of the original custody determination in Duke at the sixth month where it talks about where you have such a profound liberty interest at stake that the jailer should not be responsible for conducting that review. But I would also point to the Supreme Court's analysis in Sidvitus where it admonished that, and I'll quote here, that the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights, end quote. Again, supporting the idea that there must be an independent decision maker making this custody determination. But with respect, it seems to me you're getting there into the due process aspect of the case as opposed to the statutory construction, which is, I thought, what we were primarily focused on. I know you may want to make that argument, but that's a constitutional argument, is it not? That is also a constitutional argument. But the district court granted our claims for relief on his interpretation of the statute, applying the canon of constitutional avoidance, and did not address the constitutional arguments. And applying that canon, he was authorized to make a determination, just as this court made in Duke, that that custody determination, in order to avoid those serious constitutional concerns, should be made by a neutral decision maker. And I think that's especially relevant for this class, for individuals who are in withholding only proceedings. And that's because not only are they subject to prolonged detention, but they have been placed in proceedings because for every one of them, an asylum officer or an immigration judge has determined they have a reasonable fear. That is that they demonstrate a significant possibility of establishing eligibility under the Act. So they get transferred to these full proceedings before an immigration court. And those proceedings, along with the right to administrative appeal and judicial review, but even setting aside the appeal, the right to administrative appeal, those proceedings take months and sometimes years. As with our named plaintiff, Mr. Flores, after his case was referred to the immigration judge, he waited for over a year locked up in detention before he finally had his individual hearing. And thereafter, he waited for over two years before he finally despaired of being locked up and voluntarily dismissed his appeal. Now, in this context, there's so much that can occur over these prolonged periods. So you have an individual who at the first six-month period, like Mr. Flores or like Mr. Martinez-Banias, has not even had his individual hearing. And so maybe the court determined that they were a flight risk. But thereafter, six months later, you have an individual who's prevailed before the immigration judge, but the government files an appeal, dramatically altering the circumstances, allowing the court's analysis to come back and determine whether their detention continues to be justified. And that is the point of the constitutional analysis under Cidvitas, tying that detention to its legitimate purpose. Does the prolonged detention continue to be reasonably related to its purpose? Would you give me your perspective on this? Post Jennings, what survives of our case law vis-à-vis how often bond hearings have to be held and what's the standard of review when those are conducted? Post Jennings, this court's determination certainly survives as we've advocated, given that Jennings v. Rodriguez itself explicitly distinguished the interpretations under 1231A6. We do not contend that the periodic bond hearings that were called for in Rodriguez by the prior decision of this Court of Appeals survives. So there's not controlling case authority that mandated that the district court provide these periodic bond hearings before an immigration judge. Your argument at this point on periodic reviews is a constitutional argument alone, right? It's separate and apart from statutory construction. No. And if I may attempt to clarify that, our argument is that the district court has the authority to apply JUIF, to apply Cidvitas, and determine how the statute should be constructed thereafter. And that is to say, do those subsequent periodic custody determinations require an individual decision maker? So given that seeing is no longer good law, the district court's decision is stepping on new ground, as it were. There's no controlling authority, but the district court still did it under the rubric of the constitutional avoidance, of interpreting the statute, and explicitly disavowed that the district court would address the constitutional concerns. So while we have a separate argument that I would agree if proceedings were remanded, we'd raise that constitutional argument, we still believe the district court had ample authority to make a determination that these periodic custody review determinations should be conducted by a neutral decision maker. But I assume you're not asking this court to rule on the constitutional argument made to the district court. Is that correct? That is correct. That is correct. Yes, thank you. And even in the government's arguments, I would note that the government appears to agree when asked multiple times about these periodic bond hearings, that DUF is the bigger problem. As DUF expounded upon not just the constitutional concerns, but how they're threatened when you have the jailer, when you don't have an independent decision maker making that determination. And again, we're talking about an individual. If you get to that periodic review, you've then been locked up for over a year. And as this court held in DUF, not only are the concerns profound at six months, they amply, you know, so much more so that's been doubled or tripled. And this court has addressed cases like that. If you look at Nataraja, where an individual was granted protection, but then this case bounced back and forth between the board and the immigration judge, creating that prolonged detention. Okay. Again, I don't mean to get back to the same thing, but you seem to be drifting into a little bit different area. If the six-month hearing survived, based upon the argument we had in the first case, and you agree that Jennings knocked out the ability to have periodic bond hearings based upon the other statutes, you now seem to be making a constitutional argument about why that's necessary, why they need to have periodic bond hearings, and yet I thought you said that you're not asking us to review any constitutional decision that the district court made. Am I mistaken? Yes, in part. And only, I want to be clear, we're not asking this court to engage in that constitutional determination in the first instance, but the district court's determination was based on a statutory interpretation applying the canon of constitutional avoidance, and that necessarily bleeds in this. With respect, was that not pre-Jennings, and Jennings knocked out the bases that the district court relied upon for the periodic bond hearings after the six months? Isn't that correct? That is correct with respect to the report and recommendation, and then subsequent to the Supreme Court's decision in Jennings v. Rodriguez, the district court adopted the report and recommendation without further analysis of the periodic bond hearings, so I grant you that. So basically, your argument for a periodic bond hearing, in effect, is a new one grounded in constitutional principles, valid though they may be, really have not been considered in full by the district court. There's not been an opportunity to consider post-Jennings how that works, if at all, right? That is correct that they have not been. We presented that before the district court. It was there post-Jennings, but the district court's opinion does not address that. We do think that the underlying principles regarding if constitutional avoidance is applicable, and Jennings reaffirmed the constitutional avoidance, the canon of constitutional avoidance is applicable to this statute, then the approach taken by this court that was struck down in another statute where that canon was inapplicable was appropriate guidance for the district court. But if I may address a couple of other... Again, I apologize for interrupting your argument, but I really have this question. What do you want us to do? We would ask this court to affirm the district court's determination. They asked for a periodic review, and the Supreme Court says we can't do that. I respectfully disagree there. I think the Supreme Court said that it went well beyond the initial bond hearings established by existing regulations. Again, even with respect to 1226A, the Supreme Court was not just looking at the statute, but was looking at the implementing regulations. What do you see in the post-Jennings or in Jennings that authorizes the Ninth Circuit to approve a periodic bond review? Is there anything there? From the court, no. They don't address that. They went out of their way to say with respect to the other statute, 1225 and so on, you can't do this. You're misapplying the canon of constitutional avoidance. You're misreading the statute. There's nothing like that there. Forget it. Well, I would point out, yes, yes. And I would point out, though, that in distinguishing 1231A-6, first and foremost, the very first point that the court relies on is that that statute specifies a specific period of time, and the statute at issue they were dealing with, 1225 and 1226. Unlike this statute. So that's further reason why Congress may have desired these periodic reviews that the government interpreted the statute to provide. So it is not as if the periodic reviews have been pulled out of thin air. These are already in place. It's just a question of who conducts those periodic reviews. It's also what authority we're relying upon. There is no case law in our jurisdiction, as far as I know, that survives Jennings that authorizes a periodic bond review. Is that correct? That's correct. Okay, so you're, in effect, asking us to create new case law for the Supreme Court's review, right? Yes, I am asking you to uphold the district court's decision creating this new case law. That is correct. I would love to get that, I'm sure. So if I may turn to a couple of additional points, the government tries to distinguish Miller v. Gammie saying that this case is on point with Miller v. Gammie. Well, I would respectfully contend that Miller v. Gammie is in a much different position, whereas here the Supreme Court explicitly mentioned this contrary interpretation, or what the government alleges is a contrary interpretation, and distinguished it. So when you have an explicit reference acknowledging the continuing vitality of this court's alternative approach, the application of the canon of constitutional avoidance, you're clearly in a very different ball field than where you were at with Miller v. Gammie. Now, one thing that was, I think, defendants also ignore is that in Zebaitis itself, the Supreme Court, again, focused not just on those whose removal was not reasonably foreseeable, but instead also mentioned that for those even where that removal is reasonably foreseeable, the court must still determine whether the detention is justified and noted that it would look at whether that individual had committed any criminal offenses that may justify that detention, even for that brief period of time. So underscoring the fact that even where removal is reasonably foreseeable, it still must remain reasonably related to its legitimate purpose. And defendants say that it would be nonsensical to have both the Duke analysis and the Zebaitis analysis apply because they contradict one another. But that ignores the final footnote in Duke, which clearly acknowledges that even if you hit that 180-day threshold, if that person's removal is imminent, then they're not entitled to a bond hearing. So it addresses what defendants said was a contradiction in terms. And certainly this court's analysis in Zebaitis, by recognizing a distinction between those who are in a position where the removal is reasonably foreseeable... You didn't decide Zebaitis. That was the Supreme Court. I'm sorry. Thank you for the correction. Certainly the Supreme Court's analysis in Zebaitis by recognizing the distinction between those who are reasonably foreseeable and those cases where it's not reasonably foreseeable made clear that there still had to be a determination that the prolonged detention remained tied to its legitimate purposes. And so in conclusion, as this court has previously found, juve requires a bond hearing for these individuals when their detention becomes prolonged, one that's conducted by a neutral decision maker. And we submit that not only does that holding apply, but that rationale also implies to support the district court's additional requirement that they receive those determinations at the periodic hearings that are already called for by the regulations. Thank you. Thank you very much, counsel. So let's hear the wind-up from the government. Keisha, you're bad, right? Thank you, Your Honor. Just a couple of brief points I'd like to make, and I'm going to try not to repeat myself too much. Just touching again on regulations, because I know we again got into a discussion about regulations. The question of what the regulations may require or may allow for is separate and apart from what the statute requires. There's no question that the government can go above and beyond the bare minimum that the statute might require in promulgating regulations. And I think the court's point is a good one with respect to the only arguments before this court, both in this case and in the prior case, are the statutory arguments. The district court didn't reach those constitutional arguments. And with respect to the question of recurring bond hearings, I thank the court for correcting me earlier when I misspoke. That did not come from Duke. It would appear that the district court got that from Zadvydas, because while Zadvydas itself did not require any sort of periodic custody review or redetermination, because that wouldn't be a plausible interpretation of the statute and there's no statutory basis for it, in attempting to comply with the Supreme Court's decision in Zadvydas, the government's post-order custody review regulations, POCR we call them, regulations do provide for some form of recurring custody review determinations done by DHS. So I think that's where the district court is getting this idea of recurring. But to the court's point, that's not something from the statute. That's not something that Duke required in interpreting 1231A6. That's not something that Zadvydas required in interpreting 1231A6. The government chose to implement the period reasonably necessary to bring about removal limitation from Zadvydas by promulgating regulations that did provide for some sort of ongoing custody check, because how else could you make sure that removal was still reasonably foreseeable? But that's a separate question. In light of the government's position that none of the regulations are really before us because they weren't discussed by the district court, is it your position that with respect to periodic bond hearings, there's simply nothing before us because the district court didn't decide that except the portion that was struck down by Jennings? Is that fair? With respect to the constitutional claims and the constitutional arguments that plaintiffs may have for recurring bond hearings, that is correct. That's not before this court. I will note that this decision in Martinez-Banos is before this court and does require the recurring bond hearings. And certainly at the very least, that is clearly irreconcilable with Jennings, though, again, the government would posit that it's all clearly irreconcilable. But certainly that piece is not supportable any longer in light of Jennings. So are you asking us to remand them to allow the district court to consider the constitutional arguments that they have? In Martinez-Banos, yes, assuming that the court finds that we're correct with respect to the statutory claims, yes. And unless the court has any further questions, let me just close by saying that, as I've said probably ad nauseum, we do believe that Jennings and Doof are clearly reconcilable, and therefore the district court erred in following Doof and violating Jennings. Thank you. Thank you, counsel. The case just argued is submitted. We thank counsel on both these cases. They're a challenging, important issue, and we appreciate their being well-prepared, knowledgeable on the area. It's very helpful to us. Thank you. The court stands in recess for the day. All rise. This court for this session stands adjourned.
judges: Fernandez, M. Smith, Miller